MILLER v. DONOVAN et al.

(Circuit Court of Appeals, Second Circuit. April 6, 1896.)

1. PATENTS—EXTENT OF CLAIMS—ROAD CARTS.
   The Miller patent, No. 371,090, for an improvement in road carts, is restricted, as to claims 1 and 2, by the prior state of the art, to combinations having longitudinal springs of the precise form shown; and those claims are not infringed by a cart not having the two-part springs described in the patent. 62 Fed. 923, affirmed

2. SAME.
   The Miller patent, No. 459,098, for an improvement in road carts, designed to give to the longitudinal springs an increased longitudinal motion, is limited, as to claims 1 and 2, to a combination having the precise form of spring shown; for it was old in the art to give play to a spring by running one or both ends through an eye or slot with rubber packing, washers, etc., to prevent rattling, or too free play of the ends of the spring. 62 Fed. 923, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by Henry J. Miller against James Donovan and James J. Fitzgerald for alleged infringement of certain patents for improvements in road carts. The circuit court dismissed the bill for want of infringement (62 Fed. 923), and complainant appeals.

Herbert Knight and Edmund Wetmore, for appellant.
Henry Bacon, for appellees.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The complainant brought a bill in equity in the circuit court of the United States for the Southern district of New York, which was founded upon the alleged infringement by the defendants of claims 1, 2, and 5 of letters patent No. 371,090, dated October 4, 1887, issued to Henry J. Miller, and of

claims 1, 2, 7, 8, 9, and 10 of letters patent No. 459,098, dated September 8, 1891, also issued to said Miller. Each of said patents was for improvements in road carts. Upon final hearing the circuit court found that claims 1, 2, and 5 of No. 371,090 were valid, but contained narrow improvements upon previously known road carts, were therefore entitled to a narrow construction, and were not infringed; that claims 1 and 2 of No. 459,098 were valid, but were not infringed; that the invention of claim 7 had been anticipated, and that the other claims of the patent were invalid for lack of patentable invention. The bill was therefore dismissed. Upon this appeal the complainant relies upon the infringement of claims 1 and 2 in each of said patents. The objects of the improvements, and a sufficient description of the patented and the defendants' wagons, were given in the opinion of the circuit judge. 62 Fed. 923. The claims which are now in issue in each of said patents are as follows:

"(1) In a road cart or other vehicle, the combination of the transverse spring attached at the ends of the shafts, and supporting a centrally-located seat, the said shafts resting upon other springs, as shown and described.

"(2) In a road cart or other two-wheeled vehicle, the springs for supporting the shafts, constructed and arranged substantially as shown and described, in combination with said shafts, the transversely-arranged spring extending between and attached to them, the centrally-located seat upon said spring, and the downwardly and forwardly extending braces and supporters connected directly to the seat and pivotally to the shafts; all arranged as and for the purposes set forth."

"(1) In a light sulky or road cart, the combination of the axle, the shaft extending over and to the rear thereof, the bent plate or bar springs bolted at their forward ends directly and rigidly to the shafts forward of the axle; thence bent down slightly, and resting on the axle; thence passing to the rear thereof, and the sockets or eyes fixed to the shafts' rear ends, having a gum or rubber cushion within it with a hole to receive cushion and permit longitudinal motion of said springs, substantially as set forth.

"(2) In a road or other cart, the combination of the shafts, the axle, the spring fixed at one end of the shafts, and at an intermediate point to the axle, eyes fixed to the shafts, and adapted to receive the other ends of said springs, and resilient cushions in said eyes, surrounding the ends of said springs, the greater portion of the body of said resilient cushions being above the springs, substantially as herein set forth."

The complainant was of opinion that claim 1 of 371,090 was intended to specify the combination of a main transverse spring attached at its ends to the shafts, and so arched that the seat may be supported upon its center, and with supplementary springs interposed between the shafts and the axle; and that claim 2 included the same features, but limited the longitudinal springs to a construction having the sliding movement, and having the braces connected directly to the seat and pivotally to the shafts. The arched character of the transverse springs has a more important patentable office in the mind of the complainant's expert than it apparently had in the mind of the patentee, either in the specification and claims which were first presented to the patent office or which were finally allowed. The transverse spring was pressed upon the patent office, not as an arched spring, but as a transverse spring in combination with the longitudinal spring. We agree with the circuit judge that:

"An examination of the various patents put in evidence to show the prior art discloses the fact that it was old to support the shafts above the axle by springs extending longitudinally beneath them, and that such a device was used in combination with a transverse spring supporting the seat. Reference to the patents of Bach, No. 288,757, November 20, 1883; Bach, No. 299,319, May 27, 1884; Barber, No. 316,934, May 5, 1885; Barber & Croft, No. 342,993, June 1, 1886; not to mention others,—shows that the field of invention was much restricted when the complainant entered it, and that the combination claimed by him can be sustained only when the patent is construed so as to confine them to the particular form of longitudinal spring which he has described, and which, in the precise form shown in his specification and drawings, seems not to have been used in road wagons. As the defendants use no such two-part spring, the bill as to this patent is dismissed."

The improvement shown in patent No. 459,098 consisted in a construction of the longitudinal springs, which permitted increased longitudinal motion. The specification says:

"As customary in such carts, the seat is supported from the axle through the medium of the shafts and suitable springs. * * * The connection of the shafts to the axle is clearly shown in Figs. IV, V, and VI. 5, 5, are heavy plate springs, bolted or otherwise clamped at their forward ends to the shafts. Their rear ends run loosely through eyes, 6, 6, bolted to the shafts. A cushion, 7, preferably of soft rubber, surrounding the end of spring, 5, in each eye, and having the greater portion of its body above said springs, prevents rattling, and also takes up the jar. The springs, 5, 5, are clamped to the axle."

The circuit judge sufficiently points out the precise and narrow character of this improvement, and the defendants' construction, which avoids infringement, as follows:

"It was old in the art to give play to a spring by running one or both of its ends through an eye or slot with rubber packing, washers, or cushions in the eye to obviate rattling or noise, and prevent too free play of the ends of the spring. Such a device is found applied to a spring supporting a wagon seat in the patent to Naramore,—No. 174,288, February 29, 1876. The defendants' structure has plates or bars, bolted to the shafts forward of the axle, bending downward to the axle, where they are clamped, and thence bending upward with their ends inserted into boxes which are secured to the rear ends of the shafts. The interior of each box is packed with rubber, which acts as a cushion for the plate or bar. The bar impinges rearwardly upon this rubber cushion, which permits a slight vibration, sufficient to prevent granulation or fracture consequent upon shock, but does not admit that free play through the box, and consequent longitudinal movement, which is the characteristic of the complainant's device. The differences between defendants' and complainant's shaft supports are slight, it is true, but the field of invention was a very narrow one, and complainant's claim can be sustained only under a construction which will restrict it closely to the precise combination of his patent."

The decree of the circuit court is affirmed, with costs.